Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| EL PUEBLO DE PUERTO RICO<br><br>Parte Peticionaria<br><br>v.<br><br>EDWIN YAHIR GARCÍA RAMOS<br><br>Parte Recurrida | TA2026CE00418 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Civil núm.: ISCR202500412-0413<br><br>Sobre: Art. 6.05 y Art. 6.22 Ley de Armas |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de mayo de 2026.

Comparece la parte peticionaria, El Pueblo de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico, mediante recurso de *certiorari* y solicita que revoquemos la *Resolución* emitida el 29 de enero de 2026, notificada el 30 de enero de 2026, por el Tribunal de Primera Instancia, Sala de Mayagüez (TPI). Mediante el aludido dictamen, el foro primario concluyó que el arresto de la parte recurrida, Edwin Yahir García Ramos (García Ramos o parte recurrida), así como la evidencia incautada, fue producto de un registro irrazonable. En consecuencia, ordenó la supresión de la evidencia ocupada[1].

Con el beneficio del alegato en oposición de la parte recurrida, y luego de analizar los escritos de ambas partes y sus anejos, así como la regrabación de la vista como método de prueba, resolvemos denegar la expedición del auto solicitado.

---

[1] La evidencia en cuestión es la siguiente: Arma de fuego pistola color negra calibre 9 mm, serie número FF940 C, marca P80, con agarre "Supreme" con un abastecedor cargado (alegado en la acusación ISCR202500412) y las treinta (30) municiones 9mm (alegadas en la acusación ISCR202500413).

## I.     Trasfondo fáctico y procesal

Por hechos ocurridos el 13 de marzo de 2025, el Ministerio Público presentó denuncias contra Edwin Yahir García Ramos por infracción a los Artículos 6.05[2] y 6.22 de la *Ley de Armas de Puerto Rico de 2020*[3] y el Artículo 404 de la Ley Núm. 4-1971, Ley de Sustancias Controladas de Puerto Rico[4]. En específico, la denuncia exponía lo siguiente:

> El referido imputado EDWIN YAHIR GARCÍA RAMOS, allá en o para el 13 de marzo de 2025, en Lajas, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, ilegal, voluntaria, criminalmente, a propósito y con conocimiento y actuando en común y mutuo acuerdo con PABLO ARMANDO TORO RUIZ transportó y/o portó un arma de fuego Pistola, color negra, calibre 9 milímetros, serie núm. PF940C, agarre Supreme, con un abastecedor cargado, sin tener una licencia de armas vigente bajo la Ley de Armas. Hechos contrario a la ley.[5]

Celebrada la vista preliminar, el TPI determinó **no causa** por el Artículo 404 de la Ley de Sustancias Controladas y **no causa** en cuanto al Artículo 6.05 de la Ley de Armas, respecto al arma con número de serie AZP013. No obstante, el TPI determinó **causa probable para acusar** por el Artículo 6.05 y 6.22 de la Ley de Armas, *supra*, en cuanto al arma con número de serie PF940C.

El Ministerio Público presentó las acusaciones el 23 de mayo de 2025. Así las cosas, el 17 de septiembre de 2025, García Ramos presentó una *Moción en Solicitud de Vista Evidenciaria donde se Determine la Ilegalidad del Arresto y la Supresión de la Evidencia*[6], en la que alegó que los agentes no tenían motivos fundados para arrestarlo. Arguyó que, a la hora de los hechos y desde el lugar en el que estaba el agente que detuvo el vehículo, era "imposible observar un peine en uno de los ocupantes del auto y que, aun si lo

---

[2] Por el Artículo 6.05 se presentaron dos cargos: uno por el arma de fuego con número de serie AZP013 y el otro por el arma de fuego con número de serie PF940C.

[3] Ley Núm. 168 del 11 de diciembre de 2019, según enmendada. 25 LPRA § 461 *et seq.*

[4] Ley Núm. 4 de 23 junio de 1971, según enmendada. 24 LPRA § 2101 *et seq.*

[5] Véase, Anejo 1.

[6] Véase, Anejo 5 del recurso.

hubiese visto, esto no produjo los motivos fundados para su arresto"[7]. También alegó que los testimonios de los agentes eran estereotipados.

El Ministerio Público se opuso el 26 de septiembre de 2025 y expuso que el agente interventor tenía motivos fundados para pensar que García Ramos y los demás ocupantes del vehículo poseían en concierto y común acuerdo un arma de fuego y municiones, por lo que el arresto fue legal. Además, indicó que los testimonios de los agentes no eran estereotipados.

La vista evidenciaria se celebró el 8 de enero de 2026. En esta declaró el Agente Manuel Santana Ramos, Placa #36579, (Agente Santana Ramos), quien declaró lo acontecido el 12 de marzo de 2025 y fue contrainterrogado por la defensa. Además, se marcaron los siguientes exhibits[8]:

| Núm. Exhibit | Descripción | Anotación |
|---|---|---|
| Exhibit 1 Estipulado | Boleto Falta Administrativa 34724077 | Defensa acepta la autenticidad del documento, no su contenido. |
| Exhibit 2(a) Estipulado | Fotografía a color | Defensa indicó que tiene reparo en cuanto a que trata sobre el arma de fuego de la cual objetó que es cosa juzgada. Si se va a utilizar con relación al arresto del menor, no tiene problema, pero si es para su representado lo objetaría.<br><br>El Ministerio Público indicó que se utilizará con el propósito de motivo fundado.<br><br>El Tribunal indicó que por la Regla 107 de Evidencia se aceptará limitadamente en esas circunstancias. |
| Exhibit 2(b) al 2(g) Estipulados | Fotografías a color | Defensa estipula autenticidad y contenido. |
| Exhibit 3 Estipulado | Certificación de Funcionamiento de Arma. | Defensa estipula autenticidad y contenido, y que el arma es capaz de disparar |

---

[7] *Íd.*

[8] Véase, Anejo 8-Prueba por Estipulación.

| Exhibit 4 Estipulado | Registro electrónico de Armas. | Defensa estipula autenticidad y contenido. |
| --- | --- | --- |

Luego de escuchado el testimonio del agente, el TPI declaró con lugar la supresión de evidencia ocupada al recurrido y el 11 de junio de 2025, emitió la *Resolución* que nos ocupa. En esta expuso que el arresto a García Ramos fue ilegal y concluyó que el arma objeto de las acusaciones no estaba a simple vista. En específico, el foro *a quo* determinó que los motivos fundados para intervenir y arrestar al pasajero delantero (Toro Ruiz) del vehículo no constituían información razonable para articular motivos fundados transferibles al recurrido García Ramos, quien al momento de ser arrestado no había cometido delito. Asimismo, concluyó que, de la prueba presentada, se infería razonablemente que, para ese momento, todos los ocupantes del vehículo se encontraban bajo arresto y custodia de los agentes y que el vehículo no estaba bajo el control ni alcance inmediato de los acusados, sino bajo control exclusivo del Estado. Por último, el foro recurrido puntualizó que el Agente Santana Ramos declaró, mediante el Exhibit 2-G por estipulación, que el arma de fuego en cuestión se encontraba debajo del asiento delantero. Luego de examinar el referido exhibit, el TPI concluyó que el arma no se encontraba a plena vista, ni fue descubierta de manera inadvertida, sino que esta fue descubierta mediante un registro irrazonable sin orden judicial en un vehículo que estaba bajo la custodia del Estado. Por ello, concluyó que el arresto del recurrido fue ilegal y que la evidencia ocupada fue producto de dicho registro irrazonable, por lo que procedía la supresión de esta.

Inconforme, el Ministerio Público presentó una solicitud de reconsideración[9] el 13 de febrero de 2026 y el 4 de marzo de 2026, García Ramos presentó su oposición[10]. El 6 de marzo de 2026,

---

[9] Anejo 9 del recurso.
[10] Anejo 11 del recurso.

notificada el 9 de marzo de 2026, el TPI declaró No Ha Lugar la solicitud de reconsideración[11].

Aun insatisfecho, el Ministerio Público acude ante nos y formula el siguiente señalamiento de error:

> El Tribunal de Primera Instancia erró y abusó de su discreción al suprimir la evidencia del arma de fuego con número de serie PF940C y las municiones ocupadas por el agente Santana Ramos por concluir que el arresto del señor García Ramos fue ilegal y que la evidencia suprimida fue producto de un registro ilegal.

Junto con su recurso, el Pueblo de Puerto Rico presentó *Moción Informativa sobre Regrabación que se Presentará Físicamente y Solicitud de Autorización de Esta como Método de Prueba*[12]. El 13 de abril de 2026, emitimos resolución mediante la cual autorizamos el uso de la regrabación de la vista como método de prueba[13].

El 17 de mayo de 2026, el recurrido presentó *Escrito para Mostrar Causa y en Oposición a Petición de Certiorari*[14].

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II. Derecho Aplicable

### a. El *Certiorari*

El auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[15] Distinto al recurso de *apelación*, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo,

---

[11] Anejo 12.
[12] Entrada Núm. 2 SUMAC.
[13] Entrada Núm. 3 SUMAC.
[14] Entrada Núm. 8 SUMAC.
[15] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005); *Pueblo* v. *Colón Mendoza*, 149 DPR 630, 637 (1999).

nuestra discreción debe ejercerse dentro de un parámetro de razonabilidad, que procure siempre lograr una solución justiciera.[16]

La Regla 40 del Reglamento del Tribunal de Apelaciones instituye los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre este particular expresa: "*El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa: A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. B. Si la situación de hechos planteada es la más indicada para el análisis del problema. C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia. D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados. E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio. G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia*".[17]

**b. Supresión de evidencia**

La Cuarta Enmienda de la Constitución de Estados Unidos y el Artículo II, Sec. 10 de nuestra Constitución protegen el derecho de los ciudadanos contra registros, incautaciones y allanamientos irrazonables.[18] La Regla 234 de Procedimiento Criminal[19], es el

---

[16] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón* v. *Srio. de Justicia*, 154 DPR 79, 91 (2001).

[17] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

[18] *Pueblo v. Salamanca Corchado*, 2022 TSPR 114, 210 DPR ___ (2022); *Pueblo v. Rivera Surita*, 202 DPR 800, 805 (2019); *Pueblo v. López Colón*, 200 DPR 273, 283 (2018).

[19] 34 LPRA Ap. II, R. 234.

mecanismo procesal mediante el que el agraviado por un allanamiento o registro ilegal puede solicitar la supresión de la evidencia obtenida. La moción de supresión de evidencia tiene que exponer los fundamentos, incluir los hechos o razones específicas o precisas en las cuales se sostiene.[20]

La norma general requiere que se obtenga una orden judicial previa a efectuar un registro o allanamiento.[21] Por eso, todo registro, allanamiento o incautación que realice el Estado se presume irrazonable cuando se realiza sin orden judicial previa.[22]

Ahora bien, el Estado puede demostrar que las circunstancias particulares en ese caso justificaron la intervención policial sin la referida orden judicial, constituyéndose así una excepción a la norma general de previa orden judicial. Una de las situaciones en las que no es indispensable la orden judicial previa, por no existir una expectativa razonable de intimidad, ocurre cuando la evidencia fue observada a plena vista.[23]

Los requisitos para la aplicación de la doctrina de evidencia a plena vista son: (1) el artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que observa la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba; (3) debe descubrirse el objeto inadvertidamente, y (4) la naturaleza delictiva del objeto debe surgir de la simple observación.[24]

Tampoco es necesaria una orden judicial previa cuando el registro es incidental a un arresto válido.[25]

A tenor con la Regla 11 (a) de Procedimiento Criminal[26], un agente del orden público puede realizar un arresto sin previa orden

---

[20] *Pueblo v. Blase Vázquez,* 148 DPR 618, 633 (1999).
[21] *Pueblo v. López Colón,* supra, pág. 284.
[22] *Íd.,* págs. 287-288.
[23] *Íd.,* pág. 288; *Pueblo v. Báez López,* 189 DPR 918, 930 (2013).
[24] *Pueblo v. Muñoz, Colón y Ocasio,* 131 DPR 965, 987 (1992).
[25] *Pueblo v. Báez López,* 189 DPR 918, 930 (2013).
[26] 34 LPRA Ap. II.

judicial "cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia". Un agente del orden público tiene "motivos fundados" para arrestar a una persona si tiene conocimiento o información que lleva a una persona ordinaria y prudente a creer que la persona a ser arrestada ha cometido un delito público, razón por la cual se hace necesaria la evaluación de las circunstancias específicas de cada caso en particular.[27] Por ende, lo determinante para convalidar el arresto sin orden es si la información que tenía el agente al momento de efectuar el arresto sin orden hubiera sido suficiente para obtener una orden de arresto.[28]

### III.    Aplicación del derecho a los hechos

En su recurso, El Pueblo de Puerto Rico, plantea que el foro primario erró al suprimir la evidencia ocupada al recurrido, al concluir que su ocupación fue producto de un registro y arresto ilegal.

Luego de un estudio detenido sosegado del expediente ante nuestra consideración, así como la determinación recurrida, y tras escuchar con detenimiento el testimonio vertido por el agente Santana Ramos en la vista de supresión de evidencia, no detectamos la presencia de alguno de los criterios que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* que nos faculte a intervenir con la *Resolución* recurrida.

Así pues, ante la ausencia de justificación para intervenir con la determinación a la que arribó el TPI, declinamos ejercer nuestra función discrecional revisora y denegamos la expedición del auto de *certiorari.*

### IV.    Parte dispositiva

---

[27] *Pueblo v. Calderón Díaz,* 156 DPR 549, 556 (2002).
[28] *Íd.,* pág. 558.

En virtud de lo anterior, denegamos la expedición del auto de *certiorari*.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones